**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN PAUL O'BRIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD, <br><br> Defendants. | Case No. 1:22-cv-00567 <br><br><br> **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff John Paul O'Brien ("Plaintiff") alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Paysafe Limited ("Paysafe" or the "Company") f/k/a Foley Trasimene Acquisition Corp. II ("FTAC"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.     **NATURE OF THE ACTION AND OVERVIEW**

1.     This is a federal class action on behalf of a class of all persons and entities who purchased or otherwise acquired Paysafe and/or FTAC securities between December 7, 2020, and November 10, 2021, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Paysafe, a Bermudian company with principal executive offices in Hamilton, Bermuda, provides end-to-end payment solutions through three primary business segments: Integrated Processing, which processes payments for merchants; Digital Wallet, which enables consumers to make digital payments for purposes such as e-commerce, online gambling, and gaming; and eCash Solutions, which allows consumers to use cash for digital payments by purchasing prepaid digital vouchers.

3.     FTAC was a special purpose acquisition company formed for the purpose of acquiring or merging with an existing private company, thereby allowing the private company to go public without conducting a traditional initial public offering.  FTAC's common stock was listed on the New York Stock Exchange under the ticker symbol "BFT."

4.     On December 7, 2020, FTAC announced that it had entered into a definitive agreement and plan of merger with Paysafe Group Holdings Limited ("Legacy Paysafe").  In connection with this announcement, Defendants represented that the transaction would position Paysafe for strong, accelerated growth.

5.     FTAC and Legacy Paysafe completed their business combination on March 30, 2021 (the "Merger").  Following the Merger, the combined company began operating as Paysafe. Additionally, FTAC common stock stopped trading under the "BFT" ticker symbol and Paysafe

began trading on the New York Stock Exchange under the ticker symbol "PSFE," representing the combined company.

6.      Throughout the Class Period, Defendants repeatedly assured investors that Paysafe was executing well against its strategy and was positioned for strong growth throughout 2021.

7.      However, investors began to learn the truth about Paysafe's prospects on August 16, 2021, when the Company announced its financial results for the second quarter of 2021 and provided disappointing guidance for the third quarter of 2021.  Specifically, Defendants projected third quarter revenue of between $360 million and $375 million—well below analysts' estimate of $389 million.  Defendants attributed this weak guidance to challenges in the Company's Digital Wallet segment, including "some softness in the . . . online gambling space" in European markets.

8.      Nonetheless, Defendants assured investors that the Company would rebound in the fourth quarter of 2021, stating that "Q4 is . . . where [you] start seeing the double-digit growth in Digital Wallet's revenue," and reiterating that despite a weak third quarter, the Company still expected full-year 2021 revenue of between $1.53 billion and $1.55 billion due to strong fourth quarter expected results.

9.      On this news, the price of Paysafe common stock declined $1.58 per share, or more than 15%, from a close of $10.20 per share on August 13, 2021, to close at $8.62 per share on August 16, 2021.

10.     Defendants' reassurances proved to be false.  On November 11, 2021, Paysafe announced its third quarter 2021 financial results—including below-guidance quarterly revenue of $353.6 million—and lowered its full-year 2021 guidance for revenue and other financial metrics. Specifically, Defendants revealed that, due to "[g]ambling regulations and softness in key

3

European markets and performance challenges impacting the Digital Wallet segment," as well as "modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements," they now expected full-year 2021 revenue of between $1.47 billion and $1.48 billion.  Additionally, Defendants provided disappointing guidance for the fourth quarter of 2021, projecting quarterly revenue of between $355 million and $365 million.

11.     On this news, the price of Paysafe common stock plummeted $3.03 per share, or more than 41%, from a close of $7.27 per share on November 10, 2021, to close at $4.24 per share on November 11, 2021.

12.     This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose: (1) that Paysafe was being negatively impacted by gambling regulations in key European markets; (2) that Paysafe was encountering performance challenges in its Digital Wallet segment; (3) that new eCommerce customer agreements were being pushed back; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

13.     As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities, Plaintiff and other members of the Class have suffered significant damages.

## II.    JURISDICTION AND VENUE

14.    Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

15.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Paysafe's shares are traded on the New York Stock Exchange and many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

17.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

18.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Paysafe and FTAC securities at artificially inflated prices during the Class Period and has been damaged thereby.

19.    Defendant Paysafe is a Bermudian corporation headquartered at Victoria Place, 31 Victoria Street, Hamilton H10, Bermuda.

20.     Defendant William P. Foley, II ("Foley") is the Founder of FTAC, was the Chairman of FTAC prior to the Merger, and has served as the Chairman of the Company since the Merger.

21.     Defendant Richard N. Massey ("Massey") was the Chief Executive Officer of FTAC before the Merger.

22.     Defendant Bryan D. Coy ("Coy") was the Chief Financial Officer of FTAC before the Merger.

23.     Defendant Philip McHugh ("McHugh") was the Chief Executive Officer of Legacy Paysafe before the Merger, and has served as the Chief Executive Officer of the Company since the Merger.

24.     Defendant Ismail Dawood ("Dawood") was the Chief Financial Officer of Legacy Paysafe before the Merger, and has served as the Chief Financial Officer of the Company since the Merger.

25.     Defendants Foley, Massey, Coy, McHugh, and Dawood are collectively referred to herein as the "Individual Defendants."

26.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Paysafe's and FTAC's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

27.    Paysafe and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

28.    Paysafe, a Bermudian company with principal executive offices in Hamilton, Bermuda, provides end-to-end payment solutions through three primary business segments: Integrated Processing, which processes payments for merchants; Digital Wallet, which enables consumers to make digital payments for purposes such as e-commerce, online gambling, and gaming; and eCash Solutions, which allows consumers to use cash for digital payments by purchasing prepaid digital vouchers.

29.    Prior to the Merger, FTAC was a special purpose acquisition company formed for the purpose of acquiring or merging with an existing private company, thereby allowing the private company to go public without conducting a traditional initial public offering.  FTAC's common stock was listed on the New York Stock Exchange under the ticker symbol "BFT."

### B.    Defendants' False and Misleading Statements

30.    The Class Period begins on December 7, 2020, to coincide with Defendants' announcement that FTAC and Legacy Paysafe had entered into a definitive agreement and plan of merger.

31.    In announcing the Merger, Defendants touted Paysafe's growth potential.  For example, Defendant Foley stated:

[McHugh] and the entire management team have positioned Paysafe to be a leading global payments platform. We believe we can further enhance Paysafe's growth trajectory through accelerated operational transformation and M&A, enabled by our de-levered balance sheet. Paysafe delivers a unique value proposition in large and high-growth markets, such as gaming and e-commerce, enabling the company to generate strong organic revenue growth and margin expansion. With a proven strategy and an experienced management team and our newly formed partnership, we believe Paysafe has significant long-term growth potential.

32.     Defendant McHugh similarly emphasized Paysafe's opportunities for growth:

Today, more than ever, businesses and consumers need to connect and seamlessly transact via digital commerce. This is what Paysafe does best through our industry-leading payment processing, digital wallet, and online cash solutions. This transaction will allow us to accelerate our growth opportunities across the business, particularly in fast growth sectors such as iGaming where we are the payments partner of choice.

33.     On March 30, 2021, Defendants announced that Legacy Paysafe and FTAC had completed the Merger and that the combined company was now operating as Paysafe, with its common stock trading on the New York Stock Exchange under the ticker symbol "PSFE."

34.     In connection with this announcement, Defendant Foley represented that "Paysafe has the right assets, team and strategy in place to capitalize on a tremendous opportunity for long-term value creation in the payments industry, especially in iGaming which is really beginning to open up across the United States."

35.     Paysafe's press release announcing the completion of the Merger further assured investors that the Company "is incredibly well-positioned to continue a strong growth trajectory and create value for shareholders and all other stakeholders."

36.     On May 11, 2021, Paysafe issued a press release announcing its financial results for the first quarter of 2021. Therein, Defendants touted quarterly revenue of $377.4 million—a

year-over-year increase of 5%.  Defendants also increased the Company's full-year 2021 revenue guidance, projecting that the Company would generate between $1.53 billion and $1.55 billion in revenue (compared to a prior guidance range of between $1.52 billion and $1.55 billion, provided to investors in connection with the Company's March 9, 2021 Analyst Day).

37.     In the press release, Defendants further expressed confidence in the Company's outlook, with Defendant McHugh assuring investors that "with our great market positions and unique, two-sided network, we believe that Paysafe remains well positioned to deliver consistent double-digit growth and drive operating leverage."

38.     During the Company's quarterly conference call with analysts and investors that same day, Defendants again assured investors that the Company would continue to experience strong growth throughout the remainder of 2021.  For example, Defendant Dawood stated that "[i]n the second half of the year, you will see our revenue growth reflects the strength of our business model as we lap the legacy issues that impacted our growth in Q1."

39.     Similarly, Defendant McHugh represented that Paysafe was "executing well against our strategy" in addition to "delivering against the transformation plan," and was "well-positioned for consistent organic and inorganic growth."

40.     The above statements identified in paragraphs 30-39 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) Paysafe was being negatively impacted by gambling regulations in key European markets; (2) Paysafe was encountering performance challenges in its Digital Wallet segment; (3) new eCommerce customer

agreements were being pushed back; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

**C.      The Truth Emerges**

41.      Plaintiff and other investors began to learn the truth about the Company's prospects on August 16, 2021, when the Company announced financial results for the second quarter of 2021 and provided disappointing guidance for the third quarter of 2021.   Specifically, Defendants projected third quarter revenue of between $360 million and $375 million—well below analysts' estimate of $389 million.

42.      During the Company's quarterly conference call with analysts and investors that same day, Defendants admitted that their weak expectations for the third quarter resulted from softness in European online gambling markets and poor performance in the Company's Digital Wallet business segment.   For example, Defendant Dawood explained: "we are seeing that the seasonal quite [sic] activity there's a traditional slate of a lack of like our sporting events in Europe, we're seeing our folks on vacation.   So that's what we saw and that kind of what informs our Q3 guide for the most part."

43.      Similarly, Defendant McHugh stated:

> So we did see kind of a post COVID reopening [in Europe].  The markets really opened up after a much more stringent lockdown and certainly kind of our US comparison.  So that's kind of created some softness in the kind of online gambling space in the summer months. In addition to what we consider regular soft seasonality in the summer as well.

44.      Defendant McHugh further admitted that the Company was experiencing poor performance in its Digital Wallet segment, representing:

> Digital Wallets year-on-year in Q3 will be a little weaker, again, it's just a challenging comp because Q3 2020 really had a bunch of sporting events and lockdowns in Europe and Q3 this year is effectively going to be very quiet seasonally and as expected.  So Q3 year-on-year comps basically, has a decrease likely in revenue, effectively just slightly lower than Q2.

45.     However, Defendants assured investors that the disappointing performance expected in the third quarter would be only temporary, and that the Company would quickly resume its strong growth.  For example, in the August 16, 2021 press release announcing weak third-quarter guidance, Defendants reiterated that the Company still expected full-year 2021 revenue of between $1.53 billion and $1.55 billion.  Defendant McHugh also stated that "we remain confident in our 2021 outlook and the years ahead as we continue to see the combination of our eCommerce gateway, Digital Wallets, online banking, and eCash solutions as a true differentiator in the market."

46.     Similarly, during the Company's earnings call on August 16, 2021, Defendants explained that they reaffirmed their prior full-year guidance because strong performance in the fourth quarter of 2021 would make up for weakness in the third quarter.  For example, Defendant Dawood assured:

> We expect continued strong growth in our integrated processing segment and a return to normalized post-COVID seasonality with quieter summer gaming activity in the European markets. . . .  We expect to return to double-digit growth in the fourth quarter coupled with strong margin performance as well.  This reflects continued strength in integrated processing, including the on-boarding of several new e-commerce clients in late Q3 and early Q4, stronger growth in Digital Wallet as well as sequential improvement in direct marketing.

> . . .

> In Q3, we started seeing that seasonal acquirer activity just because there are fewer games.  But Q4 is when we expect the full kind of good comparison to start showing up where [you] start seeing the double-digit growth in Digital Wallet's revenue.

47.     Similarly, Defendant McHugh stated that "our e-commerce business . . . is seeing an extremely strong pipeline of growth as we expand and buildup a pipeline of new clients," and explained that this eCommerce pipeline was "creating some nice outlook for us as well."

48.     In response to this news, the price of Paysafe common stock declined $1.58 per share, or more than 15%, from a close of $10.20 per share on August 13, 2021, to close at $8.62 per share on August 16, 2021.

49.     Throughout the remainder of the Class Period, Defendants continued to express confidence in the Company's 2021 guidance.  For example, during an industry conference on August 24, 2021, Defendant McHugh assured investors that "we absolutely have lined aside a pretty strong pipeline and that's what underpinned our reaffirmation for full year in a strong Q4." McHugh further stated that "our top of funnel pipeline, particularly in our eCommerce and gateway business . . . [has] given us the confidence on reaffirming for the full -- for Q4."

50.     Similarly, during another industry conference on September 22, 2021, Defendant McHugh again assured investors of Paysafe's confidence in a strong fourth quarter, driven in part by new eCommerce deals:

> I think it's just the three things.  One is the direct marketing has been a subsegment of our business that has had more than fair challenges. I think we showed quite a bit of detail on that in terms of volumes and take rates and also just account -- net account growth.  So we'd certainly like to be able to show that, that trend continues, and we're getting into a nice high growth, and that's creating momentum to recovery and lap that issue.  So that's certainly one data point that we see.

The second one is just the fourth quarter seasonality and growth. And the third one is landing the pipeline, landing these clients and starting to see the volumes, particularly in e-commerce. That's where a lot of the deals are happening, seeing this happen and show up in our numbers. Those would be the three pieces that give us confidence and that we certainly want to talk about as we talk about performance.

51.    Defendants' reassurances about a fourth-quarter rebound proved to be false.  On November 11, 2021, the Company announced its financial results for the third quarter of 2021, including quarterly revenue of $353.6 million—well below even the disappointing guidance provided on August 16, 2021.

52.    Additionally, Defendants provided weak guidance for the fourth quarter of 2021—including quarterly revenue of between $355 million and $365 million, contradicting Defendants' prior claims that the Company's performance would be much stronger in the fourth quarter—and lowered Paysafe's full-year 2021 guidance for revenue, gross profits, and adjusted EBITDA:

| ($ in millions) | Q4 2021 | Full Year 2021 - prior | Full Year 2021 - updated |
|---|---|---|---|
| Revenue | $355 – $365 | $1,530 – $1,550 | $1,470 – $1,480 |
| Gross Profit (excluding depreciation and amortization) | $205 – $215 | $930 – $970 | $870 – $880 |
| Adjusted EBITDA | $90 – $100 | $480 – $495 | $425 – $435 |

53.    Defendants attributed this revised guidance primarily to "[g]ambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment," as well as "[t]he modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements."

54.     During the Company's quarterly conference call with analysts and investors that same day, Defendants further admitted that the Company's recovery would be slow, with McHugh stating that "we believe it's going to take another year to reset the Digital Wallet business and get us back on a path to grow."  Dawood additionally represented that "the current and expected performance [of the Digital Wallet segment] is lower than we expected" and that modified "scope and timing" of new client agreements would result in "volumes [being] more spread out with components going live throughout 2022 instead of the ramp we initially expected in Q4."

55.     On this news, the price of Paysafe common stock plummeted $3.03 per share, or more than 41%, from a close of $7.27 per share on November 10, 2021, to close at $4.24 per share on November 11, 2021.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Paysafe and/or FTAC securities during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of Paysafe and/or FTAC, and their families and affiliates.

57.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

58.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.     Whether Defendants violated the Exchange Act;

b.      Whether Defendants omitted and/or misrepresented material facts;

c.      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.      Whether the prices of Paysafe and/or FTAC securities were artificially inflated; and

f.      The extent of damage sustained by members of the Class and the appropriate measure of damages.

59.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

60.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**VI.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE**

62.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

15

b.      The omissions and misrepresentations were material;

c.      The Company's securities traded in an efficient market;

d.      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e.      Plaintiff and the Class purchased Paysafe and/or FTAC securities between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

63.     At all relevant times, the market for the Company's securities was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

64.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions

underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

65.     Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The prices of Company securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Paysafe and/or FTAC securities during the Class Period, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX.   SCIENTER ALLEGATIONS

66.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Company securities during the Class Period.

## X.  CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

67.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

68.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Company securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

### COUNT II

**Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

71.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

72.     The Individual Defendants acted as controlling persons of Paysafe and/or FTAC within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

74.     As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.      Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.      Such other and further relief as the Court may deem just and proper.

## XI.   **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2022                                  Respectfully submitted,

*s/ Naumon A. Amjed*
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed
Ryan T. Degnan
Barbara A. Schwartz
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
bschwartz@ktmc.com
ksauder@ktmc.com

*Attorneys for Plaintiff John Paul O'Brien*

## CERTIFICATION

I, John Paul O'Brien, declare that:

1.      I have reviewed the facts and allegations of the Class Action Complaint and authorize its filing.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in Paysafe Limited f/k/a Foley Trasimene Acquisition Corp. II securities that are the subject of this action are attached in Schedule A.  I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___1/20/2022_____          _____ *John O'Brien* _____

John Paul O'Brien

SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Common Stock | BUY | 12/21/2020 | 2,000 | $13.8000 |
| Common Stock | BUY | 11/1/2021 | 100 | $7.9550 |
| Common Stock | BUY | 11/1/2021 | 1,900 | $7.9600 |